EDWARD ELLIS, DEFENDANT IN ERROR, v. ERIE RAIL-
ROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 1, 1901—Decided June 10, 1901.

The plaintiff, while out driving with a party of four others, in the early
morning, on a hunting trip, was injured in a collision with one of
the defendant's trains, while crossing its tracks. They were in a
plumber's wagon drawn by a single horse. The plaintiff's evi-
dence tended to prove that it was quite dark at the time; that the
party halted their horse about twenty feet from the track and
looked and listened for trains, and not seeing nor hearing any,
and not hearing any bell or whistle, they proceeded to cross; that
as the horse crossed the first rail the train struck him, causing a
jar of the wagon, which threw the plaintiff upon the ground,
causing personal injuries, for the redress of which the action was
brought. Upon the trial motions were made to nonsuit and to
direct a verdict. The grounds were failure to prove negligence
against the company, and for contributory negligence. The plaint-
iff had also offered evidence before he rested tending to prove that
the view of the approaching train from where the carriage stood
before starting to cross was cut off by a growth of bushes and
trees along the railroad track to within a few feet of the crossing.
After the motion to nonsuit was denied, the defendant offered
witnesses tending to prove that the obstructing bushes and trees
had been cut down more than six months before the accident, and
also to prove that the required signals were given before reaching
the crossing. The motions to nonsuit and to direct a verdict were
denied by the trial judge, and a writ of error was brought. *Held,*
on review, that the evidence upon the points raised presented
questions that were fairly debatable; that there was not such a
failure of proof as to justify the direction of a verdict, and that
there was no error in the rulings of the court below.

On error to the Essex Circuit.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COL-
LINS and HENDRICKSON.

For the plaintiff in error, *Cortlandt Parker* and *Cortlandt
Parker, Jr.*

For the defendant in error, *Frederick E. Hodge.*

The opinion of the court was delivered by

HENDRICKSON, J.   The plaintiff below recovered damages
in the Essex Circuit against the defendant company for per-
sonal injuries sustained by a collision of the defendant's rail-
way train with a horse and wagon in which plaintiff was being
driven.   The accident occurred on defendant's Greenwood
Lake branch railway, where it crosses the Pompton turnpike,
near Singac station, in Passaic county, at six o'clock in the
morning of November 30th, 1899.   The plaintiff was one of
a party of five who had left Newark at an early hour, in
an open plumber's wagon, with guns and dogs, with the pur-
pose of spending the day, which was Thanksgiving day, in
hunting.   They were going a northerly direction on the turn-
pike, and their horse was struck by an eastbound train, then
running a southeasterly direction, on its way to Jersey City.
The effect was to throw the horse down and cause the plaintiff
to fall from the wagon and suffer severe cuts and bruises.

The exceptions taken at the trial were for the refusal of
the trial judge to nonsuit the plaintiff and to direct a verdict
for the defendant, and for refusal to charge certain requests.
The grounds of the motions to nonsuit and to direct a verdict
were for insufficient proof of negligence, and also for con-
tributory negligence.

When the motion to nonsuit was made the plaintiff and
three of the four other occupants of the wagon had testified.
Their testimony tended to prove that the plaintiff occupied
the front seat, with the driver on his right and another of the
party on his left, and that the two others sat in the hind part,
on some straw, all provided with blankets; that the horse had
traveled on a jog trot to the bridge over the Passaic, about
a quarter of a mile from the crossing, but was on a walk
while passing the bridge; that one of the party, more familiar
with the place, then called the driver's attention to the rail-
road crossing that was near, and said be careful; that it was
yet quite dark, and that they proceeded with the horse on a
walk to a point not far from the track, which they could not
see; that one of the party fixed the point as about twenty
feet distant from the track; that they then stopped and looked

each way and listened for a train, but heard no noise of any, no bell or signal, so they started on, with the horse on a walk, still looking about them and listening for a train, but heard none; that the first knowledge or intimation they had of its coming was the flash of light from the headlight, when the train was so near that it seemed to be right on them, and when it was too late to protect themselves. There was also the evidence of several witnesses tending to prove that on the left as the turnpike approaches the railroad from the south there was, at the time, a thick growth of bushes and trees along the southwesterly side of the track, from six to twenty feet in height, which completely cut off the view of the railway track and a train from a point within about thirty feet of the crossing; that this obstruction extended for about four hundred feet northward; that about a week after the accident, in the daytime, two of the witnesses were standing about thirty feet south of the railroad track, at the center of the turnpike, and saw a westbound train of cars pass; that after passing the crossing northward a distance of thirty or forty feet the train passed out of view by reason of the bushes and trees obstructing the view; that about four months later the witnesses visited the crossing again and found that the trees and bushes had been cut off along the right of way of the railroad on the south side, so that the view was unobstructed for four or five hundred feet; that the stubble showed clear and bright, and the stuff that was cut off lay in piles there at that time.

With this testimony before the court, manifestly, the motion to nonsuit could not be entertained.

The defendant then offered evidence tending to prove that the whistle was blown at the signal post and the bell was ringing automatically the required distance before reaching the crossing; that there was no obstruction to the view at the time from the turnpike south of the track looking northerly, and that there was a clear view of the rails; that when within one hundred and fifty feet of the track on the south side there was a clear view of the rails northerly for fifteen hundred feet; that the trees and bushes were cut down along the

right of way on the southwest side in the month of June, 1899, which was five months before the accident.

Thus the case presented a contrariety of proofs upon the questions involved, which it is the province of the jury to settle.

But it was urged for the defendant that the evidence of witnesses as to the obstruction to the view should be disregarded, because one or more of them swore to a curve in the road thirty or forty feet from the crossing, while the survey shows quite conclusively that the curve begins six hundred feet from the crossing. But upon this point it should be said that one of the witnesses as to the obstruction, who was not one of the parties, and whose only interest, if any, arose from his ownership of the wagon that was injured, did not testify as to the existence of the curve, and is not contradicted in that particular; also that the point as to where the curve begins has little bearing upon the question as to whether the view was obstructed at the crossing. For, if the witnesses are to be believed, the view of the rails from a point in the center of the turnpike thirty feet from the track would be effectually obstructed, even if the road ran straight without the curve. As will be perceived, the question largely narrowed down to the fact as to when the trees and brush along the right of way had been cut down, whether before or after the accident. It was also urged that there was evidence that the plaintiff and his companions had been drinking, and that their testimony was weakened thereby. But this was contradicted, and was for the jury. No request to charge involved that condition.

It was also urgently pressed that the evidence as to the giving of the signals for the crossing was so strongly for the defendant that it was entitled to an instruction for the defendant. But it must be considered that the engineer testified that the steam had been shut off as the train approached the crossing, and the train was running on a slightly down grade twenty-five miles an hour, so that the usual noise of the train would be diminished; also that four of the five persons in the party, who appear to have been respectable mechanics,

testified that, although they were looking and listening, they heard no signal given, until the headlight flashed upon them as it passed. The learned trial judge did not err in submitting these questions of fact to the jury. I may add that the trial judge held that the members of this party were jointly interested in the trip, so that any negligence of the driver was properly imputable to the plaintiff. This ruling was, of course, favorable to defendant, and its correctness is not challenged by the latter.

I have examined the exceptions to the refusal to charge certain requests of the defendant, but I find no merit in them, and no error in that part of the record. The result is that the judgment below must be affirmed.